**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **CHERYL BAREFOOT, individually, and on behalf of all others similarly situated,** | Case No. _____ |
| **Plaintiff,** | |
| **vs.** | **CLASS ACTION COMPLAINT** |
| **PEOPLES BANK f/k/a LIMESTONE BANK,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

Plaintiff Cheryl Barefoot ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Peoples Bank f/k/a Limestone Bank ("Defendant") and alleges as follows.

## INTRODUCTION

1.      Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard Plaintiff's and other similarly situated Defendant customers' sensitive information, including full names, Social Security numbers, and financial account numbers ("personally identifiable information" or "PII").

2.      Defendant is "one of the largest 200 banks in the United States, with 132 full-service bank branches in Ohio, Kentucky, West Virginia, Virginia, Washington D.C., and Maryland."[1]

3.      Upon information and belief, former and current Defendant customers are required

---

[1] https://www.peoplesbancorp.com/about-us/ (last accessed Sep. 20, 2023).

to entrust Defendant with sensitive, non-public PII, without which Defendant could not perform its regular business activities, in order to obtain financial services from Defendant. Defendant retains this information for at least many years and even after the consumer relationship has ended.

4.     By obtaining, collecting, using, and deriving a benefit from the PII of Plaintiff and Class Members, Defendant assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion.

5.     On an undisclosed date, Defendant "identified unusual activity involving an employee's email account[.]".[2] In response, Defendant "immediately took steps to secure the account and began an investigation."[3] As a result of its investigation, Defendant concluded—on an undisclosed date—that there was "unauthorized access to one employee email account between November 21, 2022 and March 23, 2023."[4]

6.     According to Defendant's untitled letter sent to Plaintiff and other victims of the Data Breach (the "Notice Letter"), the compromised PII included individuals' full names, Social Security numbers, and financial account numbers.[5]

7.     Defendant failed to adequately protect Plaintiff's and Class Members PII—and failed to even encrypt or redact this highly sensitive information. This unencrypted, unredacted PII was compromised due to Defendant's negligent and/or careless acts and omissions and their utter failure to protect customers' sensitive data. Hackers targeted and obtained Plaintiff's and Class Members' PII because of its value in exploiting and stealing the identities of Plaintiff and Class

---

[2] The "Notice Letter". A sample copy is available at
https://apps.web.maine.gov/online/aeviewer/ME/40/20d1549b-03d7-405a-a295-ff305ba9a6b9.shtml (last accessed Sep. 20, 2023).
[3] *Id.*
[4] *Id.*
[5] *Id.*

Members. The present and continuing risk to victims of the Data Breach will remain for their respective lifetimes.

8. Plaintiff brings this action on behalf of all persons whose PII was compromised as a result of Defendant's failure to: (i) adequately protect the PII of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; and (iii) effectively secure hardware containing protected PII using reasonable and effective security procedures free of vulnerabilities and incidents. Defendant's conduct amounts at least to negligence and violates federal and state statutes.

9. Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to implement and maintain adequate and reasonable measures to ensure that the PII of Plaintiff and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use. As a result, the PII of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

10. Plaintiff and Class Members have suffered injury as a result of Defendant's conduct. These injuries include: (i) invasion of privacy; (ii) theft of PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; and (vii) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available

for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

11.     Plaintiff and Class Members seek to remedy these harms and prevent any future data compromise on behalf of herself and all similarly situated persons whose personal data was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendant's inadequate data security practices.

## PARTIES

12.     Plaintiff Cheryl Barefoot is a resident of Kentucky. Plaintiff received a Notice Letter from Defendant, dated September 15, 2023, informing her that her PII was involved in the Data Breach. Plaintiff Barefoot takes great care to protect her PII. Had Plaintiff known that Defendant would not adequately protect the PII entrusted to it, she would not have obtained services at Defendant or agreed to provide Defendant with her PII.

13.     Defendant Peoples Bank f/k/a Limestone Bank is an Ohio for-profit corporation that maintains its principal place of business at 138 Putnam Street, Marietta, Ohio 45750.

## JURISDICTION AND VENUE

14.     The Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members exceeds 100, many of whom have different citizenship from Defendant, including Plaintiff. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

15.     This Court has personal jurisdiction over Defendant because its principal place of business is in this District.

16.     Venue is proper in this District because Defendant principal place of business is in this District and a significant amount of the events leading to Plaintiff's causes of action occurred in this District.

## FACTUAL ALLEGATIONS

### Defendant's Business

17.     Defendant is "one of the largest 200 banks in the United States, with 132 full-service bank branches in Ohio, Kentucky, West Virginia, Virginia, Washington D.C., and Maryland."[6]

18.     Plaintiff and Class Members are current and former customers at Defendant.

19.     As a condition of receiving financial services at Defendant, Defendant requires that its customers, including Plaintiff and Class Members, entrust it with highly sensitive personal information.

20.     The information held by Defendant in its computer systems at the time of the Data Breach included the unencrypted PII of Plaintiff and Class Members.

21.     Upon information and belief, Defendant made promises and representations to its customers, including Plaintiff and Class Members, that the PII collected from them as a condition of obtaining products and/or services at Defendant would be kept safe, confidential, that the privacy of that information would be maintained, and that Defendant would delete any sensitive information after it was no longer required to maintain it.

22.     Indeed, Defendant's Privacy Policy provides that: "[s]ecurity of information is a top priority for the Peoples family of companies. We comply with federal standards to protect your

---

[6] https://www.peoplesbancorp.com/about-us/ (last accessed Sep. 20, 2023).

information through physical, electronic, and procedural safeguards."[7]

23. Plaintiff and Class Members provided their PII to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

24. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII. Plaintiff and Class Members relied on the sophistication of Defendant to keep their PII confidential and securely maintained, to use this information for necessary purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members value the confidentiality of their PII and demand security to safeguard their PII.

25. Defendant had a duty to adopt reasonable measures to protect the PII of Plaintiff and Class Members from involuntary disclosure to third parties. Defendant has a legal duty to keep consumer's PII safe and confidential.

26. Defendant had obligations created by FTC Act, Gramm-Leach-Bliley Act, contract, industry standards, and representations made to Plaintiff and Class Members, to keep their PII confidential and to protect it from unauthorized access and disclosure.

27. Defendant derived a substantial economic benefit from collecting Plaintiff's and Class Members' PII. Without the required submission of PII, Defendant could not perform the services it provides.

28. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII from disclosure.

---

[7] https://www.peoplesbancorp.com/about-us/privacy-and-security/#712 (last accessed Sep. 20, 2023).

*The Data Breach*

29.     On or about September 15, 2023, Defendant began sending Plaintiff and other victims of the Data Breach an untitled letter (the "Notice Letter"), informing them that:

> Limestone identified unusual activity involving an employee's email account and immediately took steps to secure the account and began an investigation. A cybersecurity firm was engaged to assist. The investigation found evidence of unauthorized access to one employee email account between November 21, 2022 and March 23, 2023. The email and files in this account were reviewed, and Limestone determined that at least one email or file contained your name and Social Security number and financial account number.[8]

30.     Omitted from the Notice Letter were the dates of Defendant's investigation, the date that Defendant detected the Data Breach, any explanation as to why Defendant failed to stop the unauthorized access for approximately four months, the details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure such a breach does not occur again. To date, these critical facts have not been explained or clarified to Plaintiff and Class Members, who retain a vested interest in ensuring that their PII remains protected.

31.     This "disclosure" amounts to no real disclosure at all, as it fails to inform, with any degree of specificity, Plaintiff and Class Members of the Data Breach's critical facts. Without these details, Plaintiff's and Class Members' ability to mitigate the harms resulting from the Data Breach is severely diminished.

32.     Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information they were maintaining for Plaintiff and Class Members, causing the exposure of PII, such as encrypting the information or deleting it when it is no longer needed.

---

[8] Notice Letter.

33. The attacker accessed and acquired files Defendant shared with a third party containing unencrypted PII of Plaintiff and Class Members, including their Social Security numbers and other sensitive information. Plaintiff's and Class Members' PII was accessed and stolen in the Data Breach.

34. Plaintiff further believes her PII and that of Class Members was subsequently sold on the dark web following the Data Breach, as that is the *modus operandi* of cybercriminals that commit cyber-attacks of this type.

### Defendant Acquires, Collects, and Stores Its Customers' PII

35. As a condition to obtain products and/or services from Defendant, Plaintiff and Class Members were required to give their sensitive and confidential PII to Defendant.

36. Defendant retains and stores this information and derives a substantial economic benefit from the PII that they collect. But for the collection of Plaintiff's and Class Members' PII, Defendant would be unable to perform its services.

37. By obtaining, collecting, and storing the PII of Plaintiff and Class Members, Defendant assumed legal and equitable duties and knew or should have known that they were responsible for protecting the PII from disclosure.

38. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and relied on Defendant to keep their PII confidential and maintained securely, to use this information for business purposes only, and to make only authorized disclosures of this information.

39. Defendant could have prevented this Data Breach by properly securing and encrypting the files and file servers containing the PII of Plaintiff and Class Members.

40. Upon information and belief, Defendant made promises to Plaintiff and Class Members to maintain and protect their PII, demonstrating an understanding of the importance of securing PII.

41. Indeed, Defendant's Privacy Policy provides that: "[s]ecurity of information is a top priority for the Peoples family of companies. We comply with federal standards to protect your information through physical, electronic, and procedural safeguards."[9]

42. Defendant's negligence in safeguarding the PII of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

***Defendant Knew, Or Should Have Known, of the Risk Because Financial Institutions In Possession of PII Are Particularly Susceptible to Cyber Attacks.***

43. Data thieves regularly target companies like Defendant's due to the highly sensitive information that they custody. Defendant knew and understood that unprotected PII is valuable and highly sought after by criminal parties who seek to illegally monetize that PII through unauthorized access.

44. Defendant's data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches targeting financial institutions that collect and store PII, like Defendant, preceding the date of the breach.

45. In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[10]

46. In light of recent high profile data breaches at other industry leading companies, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June

---

[9] https://www.peoplesbancorp.com/about-us/privacy-and-security/#712 (last accessed Sep. 20, 2023).
[10] *See* 2021 Data Breach Annual Report (ITRC, Jan. 2022) (available at https://notified.idtheftcenter.org/s/), at 6.

2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or should have known that the PII that they collected and maintained would be targeted by cybercriminals.

47.     Indeed, cyber-attacks, such as the one experienced by Defendant, have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, a potential attack. As one report explained, smaller entities that store PII are "attractive to ransomware criminals…because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[11]

48.     As a custodian of PII, Defendant knew, or should have known, the importance of safeguarding the PII entrusted to it by Plaintiff and Class members, and of the foreseeable consequences if its data security systems were breached, including the significant costs imposed on Plaintiff and Class Members as a result of a breach.

49.     Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

50.     At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiff and Class Members and of the foreseeable consequences that would occur if Defendant's data security system was breached, including,

---

[11] https://www.law360.com/consumerprotection/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware?nl_pk=3ed44a08-fcc2-4b6c-89f0-aa0155a8bb51&utm_source=newsletter&utm_medium=email&utm_campaign=consumerprotection (last accessed Oct. 17, 2022).

specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

51.     Additionally, as companies became more dependent on computer systems to run their business,[12] *e.g*., working remotely as a result of the Covid-19 pandemic, and the Internet of Things ("IoT"), the danger posed by cybercriminals is magnified, thereby highlighting the need for adequate administrative, physical, and technical safeguards.[13]

52.     Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's server(s), amounting to potentially more than forty thousand individuals' detailed PII,[14] and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

53.     In the Notice Letter, Defendant offers to cover 12 months of identity monitoring for Plaintiff and Class Members. This is wholly inadequate to compensate Plaintiff and Class Members as it fails to provide for the fact victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft, financial fraud, and it entirely fails to provide sufficient compensation for the unauthorized release and disclosure of Plaintiff and Class Members' PII. Moreover, once this service expires, Plaintiff and Class Members will be forced to pay out of pocket for necessary identity monitoring services.

54.     Defendant's offer of credit and identity monitoring establishes that Plaintiff's and Class Members' sensitive PII *was* in fact affected, accessed, compromised, and exfiltrated from

---

[12]https://www.federalreserve.gov/econres/notes/feds-notes/implications-of-cyber-risk-for-financial-stability-20220512.html
[13] https://www.picussecurity.com/key-threats-and-cyber-risks-facing-financial-services-and-banking-firms-in-2022
[14] *See* https://apps.web.maine.gov/online/aeviewer/ME/40/20d1549b-03d7-405a-a295-ff305ba9a6b9.shtml (last accessed Sep. 20, 2023).

Defendant's computer systems.

55.     The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII of Plaintiff and Class Members.

56.     The ramifications of Defendant's failure to keep secure the PII of Plaintiff and Class Members are long lasting and severe. Once PII is stolen—particularly Social Security numbers—fraudulent use of that information and damage to victims may continue for years.

57.     As a financial institution in possession of its customers' and former customers' PII, Defendant knew, or should have known, the importance of safeguarding the PII entrusted to them by Plaintiff and Class Members and of the foreseeable consequences if its data security systems, or those on which it transferred PII, were breached. This includes the significant costs imposed on Plaintiff and Class Members as a result of a breach. Nevertheless, Defendant failed to take adequate cybersecurity measures to prevent the Data Breach.

### *Value of PII*

58.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[15] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[16]

---

[15] 17 C.F.R. § 248.201 (2013).
[16] *Id.*

59. The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials.[17]

60. For example, Personal Information can be sold at a price ranging from $40 to $200.[18] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[19]

61. For example, Social Security numbers are among the worst kind of PII to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as experienced by Plaintiff and some Class Members, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[20]

62. What's more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of

---

[17] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited Oct. 17, 2022).

[18] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited Oct. 17, 2022).

[19] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited Oct. 217, 2022).

[20] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Oct. 17, 2022).

misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

63.     Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[21]

64.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—Social Security number and name.

65.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[22]

66.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

67.     The fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also

---

[21] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthems-hackers-has-millionsworrying-about-identity-theft (last visited Oct. 17, 2022).
[22] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*:
https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited Oct. 17, 2022).

between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[23]

68.     Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

### Defendant Fails to Comply with FTC Guidelines

69.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

70.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. These guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[24]

---

[23] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* https://www.gao.gov/assets/gao-07-737.pdf (last visited Oct. 17, 2022).
[24] *Protecting Personal Information: A Guide for Business*, Federal Trade Commission (2016). Available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited Oct. 17, 2022).

71. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[25]

72. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

73. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

74. These FTC enforcement actions include actions against financial institutions, like Defendant.

75. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

---

[25] *Id.*

76. Defendant failed to properly implement basic data security practices.

77. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to customers' PII or to comply with applicable industry standards constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

78. Upon information and belief, Defendant was at all times fully aware of its obligation to protect the PII of its customers. Defendant was also aware of the significant repercussions that would result from its failure to do so. Accordingly, Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

### *Defendant Fails to Comply with the Gramm-Leach Bliley Act*

79. Defendant is a financial institution, as that term is defined by Section 509(3)(A) of the Gramm-Leach-Bliley Act ("GLBA"), 15 U.S.C. § 6809(3)(A), and thus is subject to the GLBA.

80. The GLBA defines a financial institution as "any institution the business of which is engaging in financial activities as described in Section 1843(k) of Title 12 [The Bank Holding Company Act of 1956]." 15 U.S.C. § 6809(3)(A).

81. Defendant collects nonpublic personal information, as defined by 15 U.S.C. § 6809(4)(A), 16 C.F.R. § 313.3(n) and 12 C.F.R. § 1016.3(p)(1). Accordingly, during the relevant time period Defendant were subject to the requirements of the GLBA, 15 U.S.C. §§ 6801.1, *et seq*., and is subject to numerous rules and regulations promulgated on the GLBA statutes.

82. The GLBA Privacy Rule became effective on July 1, 2001. *See* 16 C.F.R. Part 313. Since the enactment of the Dodd-Frank Act on July 21, 2010, the CFPB became responsible for implementing the Privacy Rule. In December 2011, the CFPB restated the implementing

regulations in an interim final rule that established the Privacy of Consumer Financial Information, Regulation P, 12 C.F.R. § 1016 ("Regulation P"), with the final version becoming effective on October 28, 2014.

83. Accordingly, Defendant's conduct is governed by the Privacy Rule prior to December 30, 2011 and by Regulation P after that date.

84. Both the Privacy Rule and Regulation P require financial institutions to provide customers with an initial and annual privacy notice. These privacy notices must be "clear and conspicuous." 16 C.F.R. §§ 313.4 and 313.5; 12 C.F.R. §§ 1016.4 and 1016.5. "Clear and conspicuous means that a notice is reasonably understandable and designed to call attention to the nature and significance of the information in the notice." 16 C.F.R. § 313.3(b)(1); 12 C.F.R. § 1016.3(b)(1). These privacy notices must "accurately reflect[] [the financial institution's] privacy policies and practices." 16 C.F.R. § 313.4 and 313.5; 12 C.F.R. §§ 1016.4 and 1016.5. They must include specified elements, including the categories of nonpublic personal information the financial institution collects and discloses, the categories of third parties to whom the financial institution discloses the information, and the financial institution's security and confidentiality policies and practices for nonpublic personal information. 16 C.F.R. § 313.6; 12 C.F.R. § 1016.6. These privacy notices must be provided "so that each consumer can reasonably be expected to receive actual notice." 16 C.F.R. § 313.9; 12 C.F.R. § 1016.9. As alleged herein, Defendant violated the Privacy Rule and Regulation P.

85. Upon information and belief, Defendant failed to provide annual privacy notices to customers after the customer relationship ended, despite retaining these customers' PII and storing that PII on Defendant's network systems.

86.     Defendant failed to adequately inform their customers that they were storing and/or sharing, or would store and/or share, the customers' PII on an insecure platform, accessible to unauthorized parties from the internet, and would do so after the customer relationship ended.

87.     The Safeguards Rule, which implements Section 501(b) of the GLBA, 15 U.S.C. § 6801(b), requires financial institutions to protect the security, confidentiality, and integrity of customer information by developing a comprehensive written information security program that contains reasonable administrative, technical, and physical safeguards, including: (1) designating one or more employees to coordinate the information security program; (2) identifying reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information, and assessing the sufficiency of any safeguards in place to control those risks; (3) designing and implementing information safeguards to control the risks identified through risk assessment, and regularly testing or otherwise monitoring the effectiveness of the safeguards' key controls, systems, and procedures; (4) overseeing service providers and requiring them by contract to protect the security and confidentiality of customer information; and (5) evaluating and adjusting the information security program in light of the results of testing and monitoring, changes to the business operation, and other relevant circumstances. 16 C.F.R. §§ 314.3 and 314.4.

88.     As alleged herein, Defendant violated the Safeguard Rule.

89.     Defendant failed to assess reasonably foreseeable risks to the security, confidentiality, and integrity of customer information and failed to monitor the systems of its IT partners or verify the integrity of those systems.

90.     Defendant violated the GLBA and its own policies and procedures by sharing the PII of Plaintiff and Class Members with a non-affiliated third party without providing Plaintiff and Class Members (a) an opt-out notice and (b) a reasonable opportunity to opt out of such disclosure.

### *Defendant Fails to Comply with Industry Standards*

91.     As noted above, experts studying cyber security routinely identify entities in possession of PII as being particularly vulnerable to cyberattacks because of the value of the PII which they collect and maintain.

92.     Several best practices have been identified that, at a minimum, should be implemented by financial institutions in possession of PII, like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Defendant failed to follow these industry best practices, including a failure to implement multi-factor authentication.

93.     Other best cybersecurity practices that are standard in the financial industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendant failed to follow these cybersecurity best practices, including failure to train staff.

94.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

95.     These foregoing frameworks are existing and applicable industry standards in the financial industry, and upon information and belief, Defendant failed to comply with at least one––or all––of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

### *Common Injuries and Damages*

96.     As a result of Defendant's ineffective and inadequate data security practices, the Data Breach, and the foreseeable consequences of PII ending up in the possession of criminals, the risk of identity theft to the Plaintiff and Class Members has materialized and is imminent, and Plaintiff and Class Members have all sustained actual injuries and damages, including: (a) invasion of privacy; (b) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (c) the loss of benefit of the bargain (price premium damages); (d) diminution of value of their PII; (e) invasion of privacy; and (f) the continued risk to their PII, which remains in the possession of Defendant, and which is subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' PII.

### *The Data Breach Increases Victims' Risk Of Identity Theft*

97.     Plaintiff and Class Members are at a heightened risk of identity theft for years to come.

98.     The unencrypted PII of Class Members will end up for sale on the dark web because that is the *modus operandi* of hackers. In addition, unencrypted PII may fall into the hands of companies that will use the detailed PII for targeted marketing without the approval of Plaintiff

21

and Class Members. Unauthorized individuals can easily access the PII of Plaintiff and Class Members.

99.     The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal PII to monetize the information. Criminals monetize the data by selling the stolen information on the black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

100.     Because a person's identity is akin to a puzzle with multiple data points, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity--or track the victim to attempt other hacking crimes against the individual to obtain more data to perfect a crime.

101.     For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate and trick individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or Phishing emails. Data Breaches can be the starting point for these additional targeted attacks on the victims.

102.     One such example of criminals piecing together bits and pieces of compromised PII for profit is the development of "Fullz" packages.[26]

---

[26] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off of those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions

103.    With "Fullz" packages, cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals.

104.    The development of "Fullz" packages means here that the stolen PII from the Data Breach can easily be used to link and identify it to Plaintiffs' and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

105.    The existence and prevalence of "Fullz" packages means that the PII stolen from the data breach can easily be linked to the unregulated data (like driver's license numbers) of Plaintiff and the other Class Members

106.    Thus, even if certain information (such as driver's license numbers) was not stolen in the data breach, criminals can still easily create a comprehensive "Fullz" package.

107.    Then, this comprehensive dossier can be sold—and then resold in perpetuity—to

---

over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See, e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen From Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecuritv.eom/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-](https://krebsonsecuritv.eom/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-finn/ (last visited on May 26, 2023).

crooked operators and other criminals (like illegal and scam telemarketers).

108.    As a result of the recognized risk of identity theft, when a Data Breach occurs, and an individual is notified by a company that their PII was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm – yet, the resource and asset of time has been lost.

### *Loss Of Time To Mitigate Risk Of Identity Theft And Fraud*

109.    As a result of the recognized risk of identity theft, when a Data Breach occurs, and an individual is notified by a company that their PII was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm – yet, the resource and asset of time has been lost.

110.    Thus, due to the actual and imminent risk of identity theft, Plaintiff and Class Members must, as Defendant's Notice Letter instructs,[27] "remain vigilant" and monitor their financial accounts for many years to mitigate the risk of identity theft.

111.    Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions, such as researching and verifying the legitimacy of the Data Breach upon receiving the Notice Letter.

112.    Plaintiff's mitigation efforts are consistent with the U.S. Government Accountability Office that released a report in 2007 regarding data breaches ("GAO Report") in

---

[27] Notice Letter.

which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[28]

113.    Plaintiff's mitigation efforts are also consistent with the steps that FTC recommends that data breach victims take several steps to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[29]

### *Future Cost Of Credit And Identity Theft Monitoring Is Reasonable And Necessary*

114.    Given the type of targeted attack in this case and sophisticated criminal activity, the type of PII involved, and the volume of data obtained in the Data Breach, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the black market/dark web for sale and purchase by criminals intending to utilize the PII for identity theft crimes –*e.g.,* opening bank accounts in the victims' names to make purchases or to launder money; file false tax returns; take out loans or lines of credit; or file false unemployment claims.

115.    Such fraud may go undetected until debt collection calls commence months, or even years, later. An individual may not know that his or her Social Security number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the

---

[28] *See* United States Government Accountability Office, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (June 2007), https://www.gao.gov/new.items/d07737.pdf.
[29] *See* Federal Trade Commission, *Identity Theft.gov*, https://www.identitytheft.gov/Steps (last visited July 7, 2022).

suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

116.    Furthermore, the information accessed and disseminated in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, where victims can easily cancel or close credit and debit card accounts.[30] The information disclosed in this Data Breach is impossible to "close" and difficult, if not impossible, to change (such as Social Security numbers).

117.    Consequently, Plaintiff and Class Members are at a present and continuous risk of fraud and identity theft for many years into the future.

118.    The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class Member. This is a reasonable and necessary cost to monitor to protect Class Members from the risk of identity theft that arose from Defendant's Data Breach. This is a future cost that Plaintiff and Class Members would not need to bear but for Defendant's failure to safeguard their PII.

### Loss Of The Benefit Of The Bargain

119.    Furthermore, Defendant 's poor data security deprived Plaintiff and Class Members of the benefit of their bargain. When agreeing to pay Defendant for products and/or services, Plaintiff and other reasonable consumers understood and expected that they were, in part, paying for the service that provided the necessary data security to protect their PII, when in fact, CentroMed did not provide the expected data security. Accordingly, Plaintiff and Class Members received products and/or services that were of a lesser value than what they reasonably expected

---

[30] *See* Jesse Damiani, *Your Social Security Number Costs $4 On The Dark Web, New Report Finds*, FORBES (Mar. 25, 2020), https://www.forbes.com/sites/jessedamiani/2020/03/25/your-social-security-number-costs-4-on-the-dark-web-new-report-finds/?sh=6a44b6d513f1.

to receive under the bargains they struck with Defendant.

*Plaintiff Barefoot's Experience*

120.    Plaintiff Barefoot is a current customer at Defendant.

121.    In order to open an account at Defendant, Plaintiff was required to provide her PII to Defendant.

122.    Plaintiff Barefoot is very careful about sharing her sensitive PII. Plaintiff stores any documents containing her PII in a safe and secure location. She has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

123.    At the time of the Data Breach—from approximately November 21, 2022 through March 23, 2023— Defendant retained Plaintiff's PII in its system.

124.    Plaintiff Barefoot received the Notice Letter, by U.S. mail, from Defendant, dated September 15, 2023. According to the Notice Letter, Plaintiff's PII was improperly accessed and obtained by unauthorized third parties, including her name, Social Security number, and financial account number.

125.    Upon receiving the Notice Letter from Defendant, Plaintiff Barefoot has spent significant time dealing with the consequences of the Data Breach including researching and verifying the legitimacy of the Data Breach upon receiving the Notice Letter. Plaintiff has spent significant time dealing with the Data Breach, valuable time Plaintiff otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

126.    Subsequent to the Data Breach, Plaintiff Barefoot has suffered numerous, substantial injuries including, but not limited to: (i) invasion of privacy; (ii) theft of PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to

mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; and (vii) the continued and certainly increased risk to her PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

127.    Plaintiff Barefoot also suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of her privacy, especially her Social Security number, being in the hands of criminals.

128.    The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendant has still not fully informed her of key details about the Data Breach's occurrence.

129.    As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

130.    As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

131.    Plaintiff Barefoot has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

## **CLASS ALLEGATIONS**

132.    This action is brought and may be properly maintained as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3).

133.    Plaintiff brings this action on behalf of herself and all members of the following Class of similarly situated persons:

All persons whose PII was compromised in the Data Breach first announced by Defendant in September 2023.

134.    Excluded from the Class are Defendant and their affiliates, parents, subsidiaries, officers, agents, and directors, as well as the judge(s) presiding over this matter and the clerks of said judge(s).

135.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

136.    The members of the Class are so numerous that joinder of each of the Class Members in a single proceeding would be impracticable. Defendant has reported to the Office of the Maine Attorney General that the breach impacted 47,590 people.[31]

137.    Common questions of law and fact exist as to all Class Members and predominate over any potential questions affecting only individual Class Members. Such common questions of law or fact include, *inter alia*:

a.   Whether Defendant had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiff's and Class Members' PII from unauthorized access and disclosure;

b.   Whether Defendant had a duty not to disclose the PII of Plaintiff and Class Members to unauthorized third parties;

c.   Whether Defendant failed to exercise reasonable care to secure and safeguard Plaintiff's and Class Members' PII;

d.   Whether an implied contract existed between Class Members and Defendant, providing that Defendant would implement and maintain reasonable security

---

[31] https://apps.web.maine.gov/online/aeviewer/ME/40/20d1549b-03d7-405a-a295-ff305ba9a6b9.shtml (last accessed Sep. 20, 2023).

measures to protect and secure Class Members' PII from unauthorized access and disclosure;

e. Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiff and Class Members;

f. Whether Defendant breached its duties to protect Plaintiff's and Class Members' PII; and

g. Whether Plaintiff and Class Members are entitled to damages and the measure of such damages and relief.

138. <u>Typicality:</u> Plaintiff's claims are typical of those of the other members of the Class because Plaintiff, like every other Class Member, was exposed to virtually identical conduct and now suffers from the same violations of the law as each other member of the Class.

139. <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

140. <u>Adequacy:</u> Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that he has no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages he has suffered are typical of other Class Members. Plaintiff has retained counsel experienced in

complex class action and data breach litigation, and Plaintiff intends to prosecute this action vigorously.

141. <u>Superiority and Manageability:</u> The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

142. The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

143. The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

144. Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

145. Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the PII of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

146. Further, Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

## COUNT I
## NEGLIGENCE

147. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

148. Defendant requires its customers, including Plaintiff and Class Members, to submit non-public PII in the ordinary course of providing its financial services.

149. Defendant gathered and stored the PII of Plaintiff and Class Members as part of its business of soliciting its services to its customers, which solicitations and services affect commerce.

150. Plaintiff and Class Members entrusted Defendant with their PII with the understanding that Defendant would safeguard their information.

151. Defendant had full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and Class Members could and would suffer if the PII were wrongfully disclosed.

152. By assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard their computer property—and Class Members' PII held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which they could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

153. Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

154. Defendant's duty to use reasonable security measures also arose under the GLBA, under which they were required to protect the security, confidentiality, and integrity of customer information by developing a comprehensive written information security program that contains reasonable administrative, technical, and physical safeguards.

155. Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the PII.

156. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its customers. That special

relationship arose because Plaintiff and the Class entrusted Defendant with their confidential PII, a necessary part of being customers at Defendant.

157. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII.

158. Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Class.

159. Defendant also had a duty to exercise appropriate clearinghouse practices to remove former customers' PII it was no longer required to retain pursuant to regulations.

160. Moreover, Defendant had and continues to have a duty to adequately disclose that the PII of Plaintiff and the Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third parties.

161. Defendant breached its duties, pursuant to the FTC Act, GLBA, and other applicable standards, and thus were negligent, by failing to use reasonable measures to protect Class Members' PII. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

     a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII;

     b. Failing to adequately monitor the security of their networks and systems;

    c.   Failure to periodically ensure that their email system had plans in place to maintain reasonable data security safeguards;

    d.   Allowing unauthorized access to Class Members' PII;

    e.   Failing to detect in a timely manner that Class Members' PII had been compromised;

    f.   Failing to remove former customers' PII it was no longer required to retain pursuant to regulations,

    g.   Failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages; and

    h.   Failing to secure its stand-alone personal computers, such as the reception desk computers, even after discovery of the data breach.

162.   Defendant violated Section 5 of the FTC Act and HPAA by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

163.   Plaintiff and the Class are within the class of persons that the FTC Act and GLBA were intended to protect.

164.   The harm that occurred as a result of the Data Breach is the type of harm the FTC Act and GLBA were intended to guard against.

165.   Defendant's violation of Section 5 of the FTC Act and GLBA constitutes negligence.

166. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

167. A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

168. It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' PII would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the financial industry.

169. Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if the PII were wrongfully disclosed.

170. Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the PII of Plaintiff and the Class, the critical importance of providing adequate security of that PII, and the necessity for encrypting PII stored on Defendant's systems.

171. It was therefore foreseeable that the failure to adequately safeguard Class Members' PII would result in one or more types of injuries to Class Members.

172. Plaintiff and the Class had no ability to protect their PII that was in, and possibly remains in, Defendant's possession.

173. Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

174. Defendant's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

175. Defendant has admitted that the PII of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

176. But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Class, the PII of Plaintiff and the Class would not have been compromised.

177. There is a close causal connection between Defendant's failure to implement security measures to protect the PII of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Class. The PII of Plaintiff and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

178. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; and (vii) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to

access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

179. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to: anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

180. Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

181. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

182. Defendant's negligent conduct is ongoing, in that it still holds the PII of Plaintiff and Class Members in an unsafe and insecure manner.

183. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

## COUNT II
## NEGLIGENCE *PER SE*

184. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

185. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by Defendant of failing to use reasonable measures to protect PII. Various FTC publications and orders also form the basis of Defendant's duty.

186. Defendant's duty to use reasonable security measures also arose under the GLBA, under which they were required to protect the security, confidentiality, and integrity of customer information by developing a comprehensive written information security program that contains reasonable administrative, technical, and physical safeguards.

187. Defendant violated Section 5 of the FTC Act, GLBA, and similar state statutes by failing to use reasonable measures to protect PII and not complying with industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of PII obtained and stored and the foreseeable consequences of a data breach on Defendant's systems.

188. Defendant's violation of Section 5 of the FTC Act and GLBA (and similar state statutes) constitutes negligence *per se*.

189. Class members are consumers within the class of persons Section 5 of the FTC Act and GLBA (and similar state statutes) were intended to protect.

190. Moreover, the harm that has occurred is the type of harm the FTC Act and GLBA (and similar state statutes) were intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Class Members.

191.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Class, the PII of Plaintiff and the Class would not have been compromised.

192.    There is a close causal connection between Defendant's failure to implement security measures to protect the PII of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Class. The PII of Plaintiff and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

193.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; and (vii) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

194.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to: anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

195.    Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

196.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

197.    Defendant's negligent conduct is ongoing, in that it still holds the PII of Plaintiff and Class Members in an unsafe and insecure manner.

198.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

<u>**COUNT III**</u>
**BREACH OF IMPLIED CONTRACT**

199.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

200.    Plaintiff and Class Members were required to provide their PII to Defendant as a condition of receiving financial services from Defendant.

201.    Plaintiff and the Class entrusted their PII to Defendant. In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen.

202.    Implicit in the agreement between Plaintiff and Class Members and the Defendant to provide PII, was the latter's obligation to: (a) use such PII for business purposes only, (b) take reasonable steps to safeguard that PII, (c) prevent unauthorized disclosures of the PII, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII, (e) reasonably safeguard and protect the PII of Plaintiff and Class Members from unauthorized disclosure or uses, (f) retain the PII only under conditions that kept such information secure and confidential.

203.    The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Defendant, on the other, is demonstrated by their conduct and course of dealing.

204.    Defendant solicited, offered, and invited Plaintiff and Class Members to provide their PII as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their PII to Defendant.

205.    In accepting the PII of Plaintiff and Class Members, Defendant understood and agreed that it was required to reasonably safeguard the PII from unauthorized access or disclosure.

206.    On information and belief, at all relevant times Defendant promulgated, adopted, and implemented written privacy policies whereby it expressly promised Plaintiff and Class Members that it would only disclose PII under certain circumstances, none of which relate to the Data Breach.

207.    On information and belief, Defendant further promised to comply with industry standards and to make sure that Plaintiff's and Class Members' PII would remain protected.

208.    In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

209.    Plaintiff and Class Members paid money to Defendant with the reasonable belief and expectation that Defendant would use part of its earnings to obtain adequate data security. Defendant failed to do so.

210.    Plaintiff and Class Members would not have entrusted their PII to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

211.    Plaintiff and Class Members would not have entrusted their PII to Defendant in the absence of their implied promise to monitor their computer systems and networks to ensure that it adopted reasonable data security measures.

212.    Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

213.    Defendant breached the implied contracts it made with Plaintiff and the Class by failing to safeguard and protect their personal information, by failing to delete the information of Plaintiff and the Class once the relationship ended, and by failing to provide accurate notice to them that personal information was compromised as a result of the Data Breach.

214.    As a direct and proximate result of Defendant's breach of the implied contracts, Plaintiff and Class Members sustained damages, as alleged herein, including the loss of the benefit of the bargain.

215.    Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

216. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.*, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

**COUNT IV**
**UNJUST ENRICHMENT**

217. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

218. Plaintiff brings this count in the alternative to the breach of implied contract count above.

219. Plaintiff and Class Members conferred a monetary benefit on Defendant. Specifically, they paid for services from Defendant and/or its agents and in so doing also provided Defendant with their PII. In exchange, Plaintiff and Class Members should have received from Defendant the services that were the subject of the transaction and should have had their PII protected with adequate data security.

220. Defendant knew that Plaintiff and Class Members conferred a benefit on it in the form their PII as well as payments made on their behalf as a necessary part of their receiving healthcare services. Defendant appreciated and accepted that benefit. Defendant

profited from these transactions and used the PII of Plaintiff and Class Members for business purposes.

221.    Upon information and belief, Defendant funds its data security measures entirely from its general revenue, including payments on behalf of or for the benefit of Plaintiff and Class Members.

222.    As such, a portion of the payments made for the benefit of or on behalf of Plaintiff and Class Members is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

223.    Defendant, however, failed to secure Plaintiff's and Class Members' PII and, therefore, did not provide adequate data security in return for the benefit Plaintiff and Class Members provided.

224.    Defendant would not be able to carry out an essential function of its regular business without the PII of Plaintiff and Class Members and derived revenue by using it for business purposes. Plaintiff and Class Members expected that Defendant or anyone in Defendant's position would use a portion of that revenue to fund adequate data security practices.

225.    Defendant acquired the PII through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

226.    If Plaintiff and Class Members knew that Defendant had not reasonably secured their PII, they would not have allowed their PII to be provided to Defendant.

227.    Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Personal

Information. Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendant instead calculated to increase its own profit at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures and diverting those funds to its own profit. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security and the safety of their PII.

228.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the money wrongfully obtained Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

229.    Plaintiff and Class Members have no adequate remedy at law.

230.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; and (vii) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and

adequate measures to protect the PII.

231.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

232.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendant's services.

## **PRAYER FOR RELIEF**

Plaintiff, individually and on behalf of all other members of the Class, respectfully requests that the Court enter judgment in her favor and against Defendant as follows:

A.    Certifying the Class as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's counsel as Class Counsel;

B.    Awarding Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, and disgorgement;

C.    Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, on behalf of herself and the Class, seeks appropriate injunctive relief designed to prevent Defendant from experiencing yet another data breach by adopting and implementing best data security practices to safeguard PII and to provide or extend credit monitoring services and similar services to protect against all types of identity theft and medical identity theft;

D.    Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

E.      Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and

expenses, as allowable; and

F.      Awarding Plaintiff and the Class such other favorable relief as allowable under

law.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: September 25, 2023          Respectfully submitted,

*/s/  Terence R. Coates*
Terence R. Coates (0085579)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, OH 45202
Phone: (513) 651-3700
Fax: (513) 665-0219
tcoates@msdlegal.com

David K. Lietz*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, LLC**
5335 Wisconsin Avenue NW
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Facsimile: (202) 686-2877
dlietz@milberg.com

* - pro hac vice forthcoming

***Attorneys for Plaintiff***